```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA

BOBBY R. SUGGS,                   )
                                  )
             Plaintiff,           )
                                  )
                                  )  Case No. CIV-19-264-JFH-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
             Defendant.           )
```

**REPORT AND RECOMMENDATION**

Plaintiff Bobby R. Suggs (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 62 years old at the time of the decision. He has a high school education and worked in the past as a heavy equipment operator. Claimant alleges an inability to work beginning on May 25, 2013, due to limitations resulting from diverticulitis, arthritis, hernia, right knee injury, inability to balance, right shoulder injury, high blood pressure, irregular bowels, depression, and anxiety.

### Procedural History

On February 27, 2017, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On

August 8, 2018, ALJ Doug Gabbard, II, conducted a video hearing from McAlester, Oklahoma, and Claimant participated from Fort Smith, Arkansas. On August 22, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on June 14, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform medium work, with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) ignoring impairments precluding the performance of medium work and failing to include limitations in the RFC; (2) failing to properly evaluate opinions from his treating physician Thomas H. Conklin, Jr., D.O.; (3) failing to properly account for the findings of consulting psychologist Theresa Horton, Ph.D., in the mental RFC determination; (4) improperly rejecting the third-party function report and instead relying on the opinions of the state agency physicians; (5) failing to properly evaluate his subjective complaints; and (6) finding he can perform work at step five.

4

**RFC Assessment**

In his decision, the ALJ found Claimant suffered from severe impairments of arthritis, unspecified depressive disorder, generalized anxiety disorder, and OCD personality traits. (Tr. 17). He determined Claimant could perform medium work with additional limitations. Claimant was limited to semi-skilled work (work which requires understanding, remembering, and carrying out some detailed skills, but does not require doing more complex work duties) where interpersonal contact with supervisors and co-workers should be superficial to the work involved. He could attend and concentrate for extended periods, should have normal, regular work breaks, and should not be required to work at fast-paced production line speeds. (Tr. 20).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of laundry worker and industrial cleaner, both of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 26). As a result, the ALJ concluded Claimant was not under a disability from May 25, 2013, his onset date, through December 31, 2017, the date last insured. (Tr. 26-27).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity

assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant contends the ALJ's RFC assessment is not supported by substantial evidence that he can perform medium work on a regular and continuing basis. Specifically, he asserts the combination of his arthritis, spondylosis, hernia, and gastrointestinal surgery and complications (*e.g.*, problems with irregular and leaking bowels) require a lower level of exertion than medium work. He argues the ALJ failed to account for all of his limitations in the RFC assessment.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere

6

presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 2000 WL 1028250, at *1 (10th Cir. 2000)(disability determinations turn on the functional consequences, not the causes of a claimant's condition).

To the extent Claimant contends his spondylosis, hernia, and gastrointestinal surgery and complications should have been included as severe impairments at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"

7

*Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

The ALJ noted Claimant alleged disability due to diverticulitis, arthritis, hernia, right knee injury, inability to balance, right shoulder injury, high blood pressure, irregular bowels, depression, and anxiety. He determined Claimant's arthritis, depressive disorder, generalized anxiety disorder, and OCD personality traits were severe impairments. (Tr. 17). The ALJ found Claimant's perforated colon, status post colectomy and subsequent reversal, diverticulitis, ventral hernia over the left abdomen, hypertension, and degenerative disc disease, considered singly and in combination, did not significantly limit Claimant's ability to perform basic work activities and were therefore nonsevere. (Tr. 17). He further stated that his finding that Claimant's arthritis was a severe impairment encompassed Claimant's complaints about his right knee and right shoulder, as there was insufficient evidence to establish the right knee injury or shoulder injury as a discrete medically determinable impairment. (Tr. 18).

The ALJ considered Claimant's severe and non-severe impairments in his summary of the medical evidence when assessing the RFC. He discussed Claimant's perforated colon and surgery as well as its reversal. He noted Claimant developed a fistula in his wound in August of 2013, but when he was discharged from the

hospital in September of 2013, the fistula had dramatically decreased and that Claimant had not received treatment for any gastrointestinal issues since his discharge from the hospital. (Tr. 20-21). He acknowledged Claimant's diagnosis of arthritis in his knee, shoulder, and neck (and medication for pain), his diagnosis of high blood pressure (and controlling medication), and his reported history of diverticulitis, with symptoms of irregular bowels, leaking bowels, and constipation (and no prescribed medication). He further noted a chest X ray revealing spondylosis of the thoracic spine in February of 2017, but also discussed consultative examination findings from Christopher Sudduth, M.D., wherein he found Claimant had a normal gait and no impairments on the range of motion assessment. The ALJ referenced Dr. Sudduth's notation of subjective pain in the lumbar spine on the range of motion assessment, the ventral hernia over the left abdomen, which was nontender to palpation, and Dr. Sudduth's findings upon examination. (Tr. 21-22). He determined Claimant's degenerative disc disease was nonsevere based upon the findings of the state agency reviewing physicians and because aside from subjective pain on range of motion assessment, Claimant had no abnormalities on examination in his back. The ALJ further determined Claimant's hernia was nonsevere because surgery had not been recommended, and on examination, it was nontender to palpation and did not affect his range of motion assessment. (Tr. 22).

No error is found, as the ALJ's decision demonstrates that he did not simply disregard Claimant's spondylosis, hernia, and gastrointestinal surgery and complications. The record shows that the ALJ considered the effects of both severe and non-severe impairments in his decision. 20 C.F.R. § 404.1545(a)(2).

Claimant also contends the ALJ failed to properly evaluate the opinion of his treating physician Dr. Conklin. He asserts that the ALJ gave Dr. Conklin's assessment little weight, but in doing so, the ALJ failed to properly explain why the opinion was not entitled to controlling weight.

Dr. Conklin completed a physical RFC evaluation for Claimant on September 25, 2017. He concluded Claimant could lift and carry up to ten pounds occasionally and five pounds frequently, stand for 20-30 minutes per day, and sit for 20-30 minutes per day. He noted Claimant needed a sit/stand option allowing him to change positions every 10-15 minutes throughout the workday. Claimant was limited to occasional rapid movements in both his right and left lower extremities, meaning three times in 15 minutes and up to three hours in an eight-hour workday. His right and left legs were to be elevated at 45 degrees when he was seated. Claimant would require breaks beyond those generally given. He could push or pull occasionally, but he could not work above shoulder level, overhead, or reach. He could infrequently use his hands for grasping, handling, fingering, or feeling. Claimant could infrequently bend

10

and climb stairs, but he could never squat, stoop, crouch, crawl, kneel, balance, or climb ladders, ramps, or scaffolds. Claimant was to completely avoid all environmental hazards, including hazardous conditions, respiratory irritants, high noise levels, and temperature extremes. Dr. Conklin concluded Claimant's impairments had existed at their present level of severity continuously, for more than one year prior to the date of assessment. (Tr. 484-85).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479

11

Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ specifically discussed Dr. Conklin's evaluation of Claimant's physical limitations, noting that his opinions precluded Claimant from performing even sedentary work on a regular and continuing basis. The ALJ declined to give Dr. Conklin's opinion controlling weight, instead giving it little weight. He noted the opinion lacked supportability and consistency and there was nothing in the medical record to support Dr. Conklin's inclusion of a limitation for Claimant to elevate his feet. The degree of limitation assigned by Dr. Conklin was inconsistent with the routine, conservative treatment he provided to Claimant. There were few, if any, abnormal findings recorded by Dr. Conklin in his treatment notes. The ALJ further concluded Dr. Conklin's opinions were inconsistent with other evidence in the record, including the findings by Dr. Sudduth, which revealed normal gait and no range of motion impairment. (Tr. 23). No error is found in the ALJ's evaluation of Dr. Conklin's opinions.

Claimant next argues the ALJ failed to include all of his mental functional limitations in the RFC assessment. He focuses specifically on the mental consultative examination by Theresa Horton, Ph.D. Claimant maintains that even though the ALJ afforded Dr. Horton's opinions "great weight," he failed to include all of her findings in the RFC, specifically findings that he should avoid

12

a densely populated work environment and has an inability to cope with stressors.

Dr. Horton examined Claimant on May 16, 2017. Claimant reported suffering from anxiety and depression on and off since undergoing surgeries. He took medication for approximately one week and then stopped because he did not like taking it. Claimant had not received other mental healthcare. During his mental status exam, he exhibited traits associated with OCD. He was socially appropriate although uncomfortable, anxious, dysthymic, and somewhat agitated. His thought processes were logical, organized, and goal directed. Claimant's recall and memory appeared intact, although his concentration was poor at times. Claimant appeared of average intelligence. His judgment was appropriate and insight was fair. Dr. Horton diagnosed Claimant with generalized anxiety disorder, unspecified depressive disorder, and OCD personality traits. As her prognosis, she stated Claimant appeared "capable of understanding, remembering, and managing most simple and complex instructions or tasks, though appears to be having significant distress when coping with stressors." He "likely would not adjust well in areas that are fast paced and/or densely populated." She believed Claimant likely "struggle[ed] with tasks as they become increasingly complex." She further found that he "appear[ed] to be having mild deficit in the area of both short and remote recall, and may benefit from maintaining lists." (Tr. 450-54).

The ALJ discussed Dr. Horton's mental examination of Claimant in the decision. He noted her diagnoses of generalized anxiety disorder, unspecified depressive disorder, and OCD personality traits. He referenced her finding that Claimant could understand, remember, and manage most simple and complex instructions and tasks, but he appeared to have significant distress when coping with stressors. He also discussed Dr. Horton's finding that Claimant likely would not adjust well in fast paced or densely populated areas and struggled with tasks as they became more complex. Dr. Horton believed Claimant had a mild deficit in both short and remote recall, and he might benefit from maintaining lists. The ALJ assigned Dr. Horton's findings "great weight" and specifically accounted for her findings by limiting Claimant to semi-skilled work, by finding Claimant could attend and concentrate for extended periods but should have normal, regular work breaks, should not be required to work at fast-paced production line speeds, and that his contact with supervisors and co-workers would be superficial to the work involved. (Tr.24-25). No error is found with the ALJ's treatment of Dr. Horton's opinion in the RFC assessment.

Claimant asserts the ALJ improperly rejected the third-party function report from Claimant's daughter. However, the ALJ specifically discussed the report in his decision. Claimant's daughter stated that Claimant's ability to work was limited because

he had a hard time getting around, his arthritis and knee pain made his daily routines more difficult, he got tired easily, and he had a hard time with balancing. The ALJ determined the statements on the third-party function report were lay witness observations outweighed by the findings and observations of Dr. Sudduth, the consulting physician. (Tr. 25). No error is found with the ALJ's consideration of the third-party function report and his determination that it was outweighed by the observations of the consulting physician.

Claimant further argues that the ALJ failed to properly evaluate his subjective complaints. He asserts the ALJ failed to provide support and detail to articulate his findings.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not

15

required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's pain and other symptoms, the ALJ noted the two-step process for the evaluation of symptoms set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 416.1529. (Tr. 20). After thoroughly summarizing the medical evidence and other evidence in the record, as well as Claimant's testimony regarding his symptoms, the ALJ determined Claimant's medically determinable impairments could reasonably cause his alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with such evidence. (Tr. 20-22). For example, he noted Claimant took pain medications, and he testified the medication stopped his pain. Although Claimant reported side effects, there is no indication in the record that he complained of side effects. The ALJ discussed Claimant's testimony that he could do most household chores, including mowing the yard on a riding lawn mower, doing yard work, shopping, and driving. (Tr. 22-23). Although Claimant reported at the hearing that he was supposed to elevate his feet to waist level or higher and sit with his feet up at least half of the day, there was nothing in the record from Claimant's primary care physician

16

with such a limitation until the completion of a medical source statement finding Claimant could not even perform sedentary work. (Tr. 23). Regarding his mental impairment, Claimant did not seek mental health treatment until just prior to his date last insured, and he had no history of other mental healthcare. (Tr. 23-24). Because the ALJ thoroughly discussed the various inconsistencies in the medical evidence and the lack of support for Claimant's subjective complaints, no error is ascribed to the ALJ's evaluation.

### Step Five Determination

Claimant argues that because the RFC was inaccurate and incomplete it could not form the basis for the VE's testimony that Claimant could perform other jobs which existed in significant numbers in the national economy. He maintains that he could not perform medium work and the ALJ should have applied the Medical-Vocational Guidelines (the "grids"), which would have directed a finding of disabled at the light or sedentary exertional levels.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir.

17

1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

The Court finds no error in the ALJ's questioning of the VE. The hypothetical questions to the VE included those limitations found to exist by the ALJ and included in the RFC. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). Moreover, the ALJ was not required to apply the grids for light or sedentary work because he determined Claimant could perform medium work with nonexertional limitations. *See Daniels v. Apfel*, 154 F.3d 1129, 1135 (10th Cir. 1998) (application of grids precluded when the claimant's characteristics do not precisely match the criteria of a particular rule).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security

Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

    DATED this 31st day of July, 2020.

                                    KIMBERLY E. WEST
                                    UNITED STATES MAGISTRATE JUDGE